UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DEIRDRE L. CLARK,<br><br>                    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>                    Defendant. | No. CASE NO. C09-5342FDB<br><br>REPORT AND RECOMMENDATION<br><br>Noted for February 26, 2010 |

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C.§636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been fully briefed, and after reviewing the record, the undersigned recommends affirmation of the administrative decision.

<u>INTRODUCTION AND PROCEDURAL HISTORY</u>

It is not the function of this court to re-weigh the evidence presented to the ALJ, but rather to determine if the ALJ has properly considered the evidence upon which the ALJ relies in reaching a decision. If the ALJ has properly evaluated the medical reports, then it is not for this

REPORT AND RECOMMENDATION - 1

court to re-evaluate the same evidence. Here, the ALJ properly evaluated and considered the evidence. Therefore, his decision should be upheld.

Plaintiff Diedre Clark was born in 1966. Tr. 259. She has a high school education. Tr. 121. From 1995 until 1999, plaintiff was responsible for the bookkeeping of a computer business that she co-owned with her spouse and another partner. Tr. 124-25. She quit working in 1999 to begin home schooling her children. Tr. 115. Plaintiff worked briefly in 2006 -- two days at JC Penney, a few days at a convenience store, and about a month at a small restaurant. Tr. 552.

Plaintiff filed an application for social security benefits on February 3, 2004, alleging disability since July 1, 2001 due to an anxiety disorder, depression disorder, panic disorder, OCD, hepatitis C, cardiac disorder, headaches, and carpal tunnel syndrome. Tr. 101-03. After the application was denied initially and upon reconsideration, plaintiff requested an administrative hearing. Tr. 78. The hearing subsequently occurred on April 10, 2008, conducted by an administrative law judge ("ALJ"). Tr. 549-62. Seeing a need for further evidence, the ALJ ordered a psychiatric evaluation, Tr. 559, and reconvened the matter at a later date. Tr. 563-80.

On August 27, 2008, the ALJ issued a decision denying plaintiff's application. Tr. 18-35. The ALJ found that plaintiff had the following severe impairments: thoracic degenerative disc disease, anxiety disorder, and methadone dependence, Tr. 23-27, but nonetheless, retained the residual functional capacity to perform light work. Specifically, the ALJ concluded that plaintiff could perform work as a parking lot cashier, performing small products assembly, or as a paper sorter/recycler. Tr. 33. After the Appeals Council declined review, the ALJ's decision became the administration's final decision. Tr. 6-9.

Plaintiff now seeks judicial review of the ALJ's decision, filing her Complaint on June 10, 2009. In her Opening Brief (Doc. 16), plaintiff raises the following four arguments:

REPORT AND RECOMMENDATION - 2

1. Did the ALJ err by repeatedly rejecting opinions from treating, examining and nonexamining physicians which support a finding of disability, in favor of the nonexamining physician's opinions?

2. Did the ALJ err by rejecting the lay witness statement?

3. Did the ALJ err by failing to follow SSR 96-8p when assessing the RFC?

4. Did the ALJ err by finding plaintiff capable of performing other work pursuant to the VE's testimony which was based upon defective RFC findings?

Opening Brief at 1.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C.§405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While this Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less

REPORT AND RECOMMENDATION - 3

than twelve months. 42 U.S.C.§423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if her impairments are of such severity that she is unable to do previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C.§423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## DISCUSSION

### *1. THE ALJ PROPERLY EVALUATED THE MEDICAL EVIDENCE*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted). The ALJ must only explain why "significant probative evidence has been rejected." Id.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A nonexamining physician's opinion may constitute

REPORT AND RECOMMENDATION - 4

substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). The ALJ may not, however, substitute his or her own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831. In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff argues the ALJ failed to properly consider the medical evidence. Plaintiff specifically argues the ALJ failed to consider the opinions of Drs. Litman, Essink, Plamp, Roberts, Allen, Williams, and Mitchell. Opening Brief at 15-20. The court has reviewed the argument and finds no error in the ALJ's analysis and substantial evidence supports his decision. The ALJ appears to have considered the medical evidence in reaching his decision (see below). The fact that the ALJ did not reach the same conclusion argued by plaintiff is not grounds for reversal.

The court notes that the medical records may have been interpreted in the manner plead by plaintiff. However, it is worth repeating that the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ or the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, as it may be in this matter, it is the ALJ's conclusion that must be upheld. Id. The ALJ's opinion reflects a rational interpretation of the evidence.

*A.     Jack Litman, Ph.D.*

The ALJ did not reject examining psychologist, Dr. Litman's findings entirely, but gave them the weight he thought they were due by limiting plaintiff to work that involved only simple and repetitive tasks, as well as work that did not involve the distractions of frequent contact with the public or contact involving more than a few people at once. Tr. 28. The ALJ specifically noted that testing by Dr. Litman revealed evidence of exaggeration. Tr. 30, 544, 545.

The ALJ thoroughly discussed the opinions of Dr. Litman. Tr. 26-27, 27, 31-32, 536-47. The ALJ specifically addressed and accommodated Dr. Litman's diagnoses and opinions, including issues such as memory, methadone, anxiety, panic, depression and others. Tr. 26-27, 30, 31-32. The ALJ appropriately noted that Dr. Litman's opinion of plaintiff's Global Assessment of Functioning (GAF) score was internally inconsistent with his opinion regarding her level of cognitive functioning and episodic nature of her symptoms. Tr. 31-32, 546-47. The ALJ specifically discussed Dr. Litman's findings regarding her cognitive abilities, memory, comprehension, and reasoning. Tr. 27, 31-32. Determining that a medical opinion is contradicted by the same doctor's notes, observations, and opinions is "a permissible determination within the ALJ's province." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir.

2005). The ALJ properly noted internal inconsistencies. The ALJ properly considered Dr. Litman's opinions and the decision is supported by substantial evidence.

*B.     Beal Essink, M.D.*

Plaintiff argues the ALJ failed to consider examining psychiatrist, Dr. Essink's findings of below average abilities in concentration, persistence, pace and interacting with others. Opening Brief at 16-17. The ALJ specifically addressed plaintiff's limitations in interacting with others. Tr. 31. He stated that Dr. Essink found "below average focus, concentration, pace, and persistence." *Id*. The ALJ also specifically noted Dr. Essink's opinion of an average ability to follow simple, but not complex instructions. *Id*. The residual functional capacity finding accommodated Dr. Essink's opinion by finding that plaintiff was limited to only simple and repetitive tasks, and work that did not involve the distractions of frequent contact with the public or contact involving more than a few people at once. Tr. 28.

Similarly, the ALJ's residual functional capacity finding sufficiently accommodated limitations due to stress. Tr. 28, 31. Dr. Essink predicted that plaintiff "would have a severely below average ability to tolerate stress." Tr. 447. Again, the ALJ did not reject the limitations and opinion of Dr. Essink, as argued by plaintiff. In contrast, the ALJ provided specific limitations in the residual functional capacity finding that would accommodate and lessen the stress plaintiff would experience on the job.

The ALJ specifically found that if Dr. Essink's opinion was to be read as an opinion that plaintiff could not work, such an opinion would be unfounded in light of plaintiff's demonstrated abilities to successfully engage in stressful situations. Tr. 31. The ALJ noted plaintiff's ability to care for her five children with the help of a disabled partner and her ability to attend and study for college and other classes. Tr. 30, 31, 107-108, 446, 497. Activities that conflict with a

REPORT AND RECOMMENDATION - 7

physician's opinion of limitations are a legitimate basis for the ALJ to consider in determining the weight that physician's opinion deserves. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999); Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989).

The undersigned finds no error in the ALJ's analysis of Dr. Essink's opinion and the weight afforded to that medical opinion.

*C.     Charles Plamp, M.D., and James Roberts, M.D.*

Dr. Plamp cared for plaintiff at The Vancouver Clinic from March 12, 2003 through February 10, 2004, reporting that plaintiff was treated for chronic back pain, hepatitis C, depression and anxiety, and labile hypertension. Tr. 268-313. Dr. Plamp expressed concern that there was a lack of objective findings to justify the methadone plaintiff was taking. Tr. 268. Dr. Plamp recommended interferon therapy for plaintiff's active hepatitis. Tr. 271. On August 26, 2003 and December 18, 2003, Dr. Plamp completed single paged Medical Source Statements at the request of DSHS. Tr. 530-531. Dr. Plamp considered plaintiff unable to work for at least 12 months due to medical conditions of a chronic ruptured disk and chronic hepatitis C. Tr. 530-531. Treating physician, Dr. Roberts completed similar paperwork, reaching similar conclusions. Tr. 526-529.

The ALJ properly evaluated the opinions of Dr. Plamp and Dr. Roberts, providing specific and legitimate reasons for rejecting the conclusions that plaintiff is unable to perform any types of work. For instance, Dr. Plamp opined that plaintiff's condition prevented her from participating in employment. Tr. 31, 270, 275, 530, 531. Dr. Roberts checked boxes indicating plaintiff was limited from even sedentary work. Tr. 526-529. The ALJ limited the weight given to these conclusions for several reasons. First the ALJ noted the opinions were not supported by objective evidence, such as medical testing. Tr. 31. The ALJ relied on the medical evidence as a whole, noting that both Dr. Plamp's and Dr. Harrison's review of MRI results and physical exam

REPORT AND RECOMMENDATION - 8

of plaintiff did not support a clear cause for the limitations alleged. Tr. 29. The ALJ also noted that both Drs. Harrison and Plamp improved condition with treatment (steroid injections and physical therapy). *Id.* An ALJ may discredit the opinions of a treating physician that are unsupported by objective medical findings. Batson, 359 F.3d at 1195.

Second, the ALJ rejected the opinions of Dr. Plamp and Dr. Roberts because they were primarily based on plaintiff's subjective reports. The court notes plaintiff does not directly challenge the ALJ's finding that she was found to be less then credible, specifically with regard to her statements concerning the intensity, persistence and limiting effects of her symptoms. Tr. 29-30. Plaintiff collaterally attacks the ALJ's credibility analysis in the context of the ALJ's consideration of her residual functional capacity, but as explained below, the ALJ did not err in limiting plaintiff's subjective complaints. A treating physician's prescribed work restrictions that are based on a patient's subjective characterization of symptoms are reasonably discounted when the ALJ finds the plaintiff less than credible. Bray v. Commissioner, 554 F.3d 1219, 1228 (9th Cir. 2009); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ further noted lack of treatment as a reason for discounting the medical opinions which supported a finding that plaintiff was unable to work. The ALJ's review of the medical evidence revealed little treatment during that time period that Dr. Roberts stated she was unable to work, other than for plaintiff's gallbladder. Tr. 24-27, 31. In addition, despite observed improvement in her condition, the ALJ noted plaintiff did not maintain consistent attendance at physical therapy from April 2004 to June 2004. Tr. 29. The amount of treatment is an important indicator of the intensity and persistence of plaintiff's symptoms. 20 C.F.R.§416.929(c)(3).

REPORT AND RECOMMENDATION - 9

Finally, the ALJ stated, "In addition, Dr. Plamp's and Dr. Roberts' opinions were given for the purpose of continuing the claimant's State general assistance benefits and can be interpreted as advocacy for disability on behalf of the claimant." Tr. 31. As a general matter the undersigned agrees with plaintiff that the ALJ should avoid discounting medical opinions on such a basis, but nonetheless, the court recognizes that an opinion of a physician who is acting as an advocate is entitled to less weight. Matney v. Sullivan, 981 F.2d 1016, 1020 (holding that a physician's opinion is entitled to less weight when he had agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits."). The ALJ's reference to this factor is only being upheld in this case because of the other references and reasons made in conjunction to discount the opinions expressed by these two physicians.

In sum, the ALJ provided sufficient reasons to not accept the disability opinions of Drs. Plamp and Roberts. "'[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability.'" Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002) *quoting* Morgan, 169 F.3d at 600. *See also* Tonapetyan, 242 F.3d at 1148 (Opinion of a treating physician "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability).

D.  *Beverly Allen, M.D.*

Beverly Allen, M.D. is a psychiatrist and performed a psychiatric evaluation of plaintiff. TR 330-34. The ALJ did not entirely reject Dr. Allen's opinions, as argued by plaintiff. Instead, he rejected that portion of Dr. Allen's opinion that lacked support in the record and accepted and accommodated Dr. Allen's other opinions regarding plaintiff's limitations. Tr. 31. The ALJ explained that he was accepting the portion of Dr. Allen's opinion that plaintiff was able to perform simple tasks with limited social contact due to anxiety. Id. The ALJ stated Dr.

Allen's opinion in that regard was consistent with the opinion of Dr. Brown's and Dr. Clifford's Mental Residual Functional Capacity Assessment. Tr. 479-82.

The ALJ did not accept Dr. Allen's conclusion that plaintiff "is not able to work consistently" because it was based on complaints of hallucinatory like symptoms that lacked recurrence or further support in the record. Tr. 31, 334. The ALJ correctly noted that the record lacked additional evidence of hallucinatory like symptoms after Dr. Allen's evaluation. Tr. 31. The ALJ properly discounted Dr. Allen's opinion in light of the medical evidence as a whole, particularly the opinions of Dr. Brown and Dr. Clifford.

*E.    Sally Williams, M.D., and Jennifer Mitchell, M.D.*

Plaintiff argues the ALJ rejected the opinions of treating physicians, Dr. Williams and Dr. Mitchell without providing clear and convincing reasons. Opening Brief at 18- 21. Plaintiff's analysis is focused on the physicians' prognosis for the effects of interferon treatment. Id.

The ALJ noted that both Dr. Williams and Dr. Mitchell expected plaintiff to be affected by severe fatigue due to the treatment. Tr. 24-25. However, the ALJ reviewed the medical records following the treatment and did not find any significant complaints of fatigue. Tr. 24. A review of the records cited by the ALJ support his interpretation.

Plaintiff began interferon treatment with Dr. Williams in August 2005. Tr. 491. In November, approximately three months into the treatment, plaintiff complained of significant fatigue. Tr. 490. However, plaintiff was seen and examined by Dr. Willams or her office at least six times during treatment, but did not complain of any problems with fatigue. Tr. 487-489. A failure to report symptoms to treatment providers allows an inference that they did not occur as later claimed. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). The ALJ reasonably discredited Dr. Williams' and Dr. Mitchell's prognosis of severe, disabling fatigue. Plaintiff's

REPORT AND RECOMMENDATION - 11

limitations due to interferon treatment were not as severe as anticipated. The ALJ also noted a significant increase in functioning after interferon treatment ended, as well as later increased activities of attending school. Tr. 32.

In sum, the ALJ appropriately weighed the opinions of Dr. Williams and Dr. Mitchell. The court finds no error in the ALJ's finding that plaintiff's hepatitis, including the period of interferon treatment, results in a non-severe impairment.

### *2.* *THE ALJ PROPERLY ASSESSED THE LAY WITNESS EVIDENCE*

Credibility determinations are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043. Nevertheless, when an ALJ discredits lay witness testimony concerning a claimant's ability to work the ALJ must provide reasons "that are germane to each witness." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir.1996). The reasons "germane to each witness" must be specific. Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006)(explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

Plaintiff argues the ALJ improperly rejected the statements of Lenna Ann Terry, a friend of plaintiff's. The court does not find any merit in this argument.

The ALJ specifically noted that the statement of Ms. Terry was internally inconsistent. Tr. 32, 160-168. The ALJ stated:

> Ms. Terry's report that although the claimant functioned at a less than sedentary level, engaged in very limited activities of daily living, and was significantly affected by stress, is inconsistent with her further report that the claimant remained able to supervise her children and attend 75 percent of school functions. It is also inconsistent with the claimant's report to Dr. Essink in July 2005 that she helped care for five children, left the house daily and accompanied Ms. Terry to take the children to school, the skate park, and the library (Exhibit 19F). In addition, the claimant had not followed through the treatment recommendations at the time Ms. Terry completed the questionnaire, and she did not begin interferon treatment until August 2005. Medical records reveal a significant increase in functioning after interferon treatment was completed in August 2006, notably making plans to relocate to Alabama in August 2006. Medical records dated June

REPORT AND RECOMMENDATION - 12

2007 also reveal the claimant reported she was in school studying counseling (Exhibit 30F/6).

Tr. 32.

The ALJ's reference to (i) internal inconsistencies, (ii) inconsistent reports of plaintiff's activities, and (iii) interferon treatment recommendations and effect, each provided germane reasons, for not crediting every limitation Ms. Terry alleged. In sum, the ALJ properly relied on the medical evidence and plaintiff's activity level to support the finding that plaintiff's limitations are not as severe as stated by the lay witness.

### 3. THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY

"[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R.§ 404, Subpart P, App. 2§200.00(c). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R.§404.1512(a). Social Security guidelines further define residual functional capacity ("RFC") as "what an individual can still do despite his or her limitations" on a regular and continuing basis for 8 hours a day, 5 days a week. Social Security Ruling 96-8.

Here, the ALJ found that plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to work involving simple and repetitive tasks. She is limited to work involving only occasional contact with the public but never involving more than three to four people at once." Tr. 28. Plaintiff argues the ALJ failed to follow the SSR 96-8 guideline in making this finding.

The court is not persuaded by plaintiff's argument that the ALJ's residual functional capacity finding did not consider whether she could work on a "regular and continuing basis." Here, the ALJ explained that he was making his assessment of plaintiff's limitations in

REPORT AND RECOMMENDATION - 13

accordance with the social security regulations, stating specifically that he was evaluating plaintiff's mental functioning as required by SSR 96-8p. Tr. 28. "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p. It is axiomatic that the residual functional capacity finding is inherently an assessment of a claimant's ability to perform ongoing work. 20 C.F.R.§416.945(a)(4)("When we assess your residual functional capacity, we will consider your ability to meet the physical, mental, sensory, and other requirements of work, as described in paragraphs (b), (c), and (d) of this section."). Plaintiff's assertion that the ALJ was required to find her capable of working 8 hours per day 5 days per week on a regular and continuing basis is duplicative and unsupported.

Moreover, the court does not accept plaintiff's argument that the ALJ failed to consider the alleged side effects of plaintiff's medications, all of the medical opinions, or plaintiff's alleged limitations.

First, the ALJ properly considered the medical evidence, as discussed above. The ALJ specifically discussed Dr. Litman's opinion that plaintiff's use of methadone and Klonopin caused memory problems, plaintiff retained good cognition, comprehension, and reasoning. Tr. 31-32. The court again notes that the ALJ accommodated plaintiff's memory problems by limiting the complexity and newness of tasks she would perform, as well as the distractions from working with the public and multiple persons at once. Tr. 28.

Second, plaintiff argues the ALJ's RFC is based on an erroneous assessment of plaintiff's credibility. This collateral attack on the ALJ's decision is also unsubstantiated.

REPORT AND RECOMMENDATION - 14

Credibility determinations are particularly within the province of the ALJ. <u>Andrews</u>, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, he must articulate specific and adequate reasons for doing so. <u>Greger v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R.§404.1529, 416.929; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R.§404.1529(b), 416.929(b); <u>Smolen</u>, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir.1991) (*en banc*). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. <u>Smolen</u>, 80 F.3d at 1284; <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

Here, the ALJ provided clear and convincing reasons for limiting plaintiff's credibility. Tr. 29-30. For example, the ALJ noted that plaintiff's allegations of pain were inconsistent with the medical evidence properly relied upon by the ALJ. Tr. 29. The ALJ also noted plaintiff's activities were inconsistent with her allegations of disabling limitations, stating the following:

> The claimant's allegations of physical and mental impairments resulting in disabling functional limitations is inconsistent with her ability to attend college classes for three hours two to three times a week in January 2004 (Exhibit 2E/1). Although the claimant has reported that she relies on her partner and children to perform the majority of the household chores, cooking, and shopping, she has otherwise reported that her partner is also disabled by residuals of back surgeries and cardiac stent (Exhibits 2E/3 and 8F/3). The claimant was able to engage in activity necessary to relocate to Alabama in August 2006 (Exhibit 29F/1). Medical records dated June 2007 also reveal the claimant reported she was in school studying counseling 9Exhibit 30F/6). The claimant was also able to

REPORT AND RECOMMENDATION - 15

> engage in sustained activity for at least five hours during a psychological evaluation performed by Jack M. Litman, Ph.D., in May 2008 (Exhibit 34F/2). The ability to perform the above activities is inconsistent with an inability to perform all work activity and suggests she is more functional than she alleges.

(Tr. 30). The ALJ also noted plaintiff's credibility was reduced by test results that showed exaggeration. Tr. 30, 545. The ALJ's credibility determination was based on substantial evidence and correct legal standards.

After reviewing the record and ALJ's RFC finding, the undersigned finds no error. The ALJ's RFC finding accurately reflects substantial medical evidence relied upon by the ALJ.

## 4. *SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S HYPOTHETICAL QUESTIONS POSED TO THE VOCATIONAL EXPERT*

At step-five of the administrative process the burden of proof shifts to the Commissioner to produce evidence of other jobs existing in significant numbers in the national economy that plaintiff could perform in light of her age, education, work experience, and residual functional capacity. *See* Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); Roberts v. Shalala, 66 F.3d 179, 184 (9th Civ. 1995). In Tackett, the court noted "there are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, subpt. P, app. 2." Id.

Where there is conflicting evidence the ALJ may resolve such conflicts, and the ALJ's findings will be upheld where the weight of the medical evidence supports the hypothetical questions posed by the ALJ. Martinez v. Heckler, 807 F.2d 771 (9th Cir. 1986). A vocational hypothetical must set forth all the reliable limitations and restrictions of the particular claimant that are supported by substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Although the hypothetical may be based on evidence which is disputed, the assumptions

REPORT AND RECOMMENDATION - 16

in the hypothetical must be supported by the record. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)(*citing* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)).

Here, plaintiff argues the ALJ erred when he found plaintiff retained the ability to work as a small products assembler, parking lot cashier or sorter/recycler. Opening Brief at 24. Plaintiff argues the ALJ erred because he relied on testimony of the vocational expert which was based on a hypothetical that did not include all of plaintiff's limitations.

The court is not persuaded by plaintiff's argument because it is premised on the argument that the ALJ erred when he evaluated the medical evidence and assessed plaintiff's RFC. As explained above, the ALJ did not err in his analysis of the medical evidence supporting the finding that plaintiff retains the ability to perform light work with certain restrictions. The hypothetical posed to the vocational expert properly reflected the medical evidence and the RFC, as assessed by the ALJ. Tr. 577-79.

In sum, the ALJ properly questioned the vocational expert and relied on the testimony to identify certain jobs within the national economy plaintiff would be able to perform. The Court finds no error in the ALJ's hypothetical posed to the vocational expert or his reliance on the vocational expert's testimony to conclude plaintiff is capable of performing work as a small products assembler, parking lot cashier, or sorter/recycler.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the administrative decision. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit

REPORT AND RECOMMENDATION - 17

imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 26, 2010, as noted in the caption.

DATED this 3rd day of February, 2010.

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18